LAW OFFICE OF BRIAN M. HIGBIE
*ATTORNEY & COUNSELOR AT LAW*

202 BARNES STREET
OSSINING, NY 10562

(914) 613-9250
HIGBIE.LAW@GMAIL.COM

August 19, 2026

Via ECF
Honorable Cathy Seibel, USDJ SDNY
300 Quarropas Street
White Plains, NY 10601

Re: **Stuart Tiekert v. Thomas Murphy and Frank Tavolacci, 23-CV-8714 (CS)(JCM)**

Honorable Judge Seibel:

I write in response to the Court's July 29, 2026 order directing me to show cause why the citations and quotations identified in the Court's bench ruling do not violate Rule 11(b). I do not contest that they do. This letter is my full and candid account of what happened, my response to each item the Court identified, the steps I have already taken and will take going forward, my request regarding any appropriate sanction, and my apology.

## I. Acknowledgment

In opposing the motions to dismiss filed by defendants Murphy and Mountain, I used ChatGPT to assist with legal research. For each case ChatGPT identified, I looked up the cases and confirmed that the cases existed, that they were in the right jurisdiction, and that they regarded the relevant subject matter, i.e., Section 1983 elements and qualified immunity issues. I did not independently verify the accuracy of the quotations or the characterizations of the holdings before including them in my opposition papers. That does not satisfy the reasonable-inquiry obligation Rule 11(b)(2) imposes, and it is entirely my responsibility. I offer the explanation below not to excuse that failure but to give the Court a complete and honest account of how it occurred.

## II. How This Happened

I was aware of the risk that generative AI tools can fabricate legal authority, but I profoundly misunderstood it. I had read news coverage of an attorney sanctioned for citing entirely nonexistent cases, and I had encountered the problem firsthand. I had very little experience

using an ai chat bot but in an earlier, unrelated Surrogate's Court matter, I tried ChatGPT to research an issue and it returned two results: one citing a nonexistent case; and one citing a real but wholly irrelevant case. I recognized both as unusable and stopped using AI research tools as a result.

The only other time I used a large language model for legal research was in December 2025 for the opposition briefs at issue. About that time an acquaintance who works in the AI industry was talking about the amazing capabilities of AI, and I responded with my story of being fed fake cases months prior. He told me that they are constantly making improvements, that ChatGPT has changed enormously in the ensuing months, and that ChatGPT fixed the fabrication problem. I bought into the hype. When I tried it again in December 2025 for these opposition briefs, I was on guard for nonexistent cases and wholly irrelevant cases. I looked up every case it fed me and confirmed it was a real case, in the proper jurisdiction, and I quickly reviewed each case to be sure it dealt with the relevant subject matter. It did not occur to me that the tool could or would invent quotes from these real cases or invert their holdings. In my mind, the hard part, the part that would be impressive, would be identifying a relevant case in the proper jurisdiction, etc. I think that if the results had not been in quotations, I would have seen them as interpretations and I would have investigated and verified properly. Finding and selecting words within a given document I thought the tool can unquestionably perform better than any person. In my mind, it was the equivalent of typing Control F; no one questions whether the words found using Control F are actually in the document. I profoundly misunderstood the tool. I do not offer this as a justification for skipping the verification step, only as an honest account of why, at the time, the gap in my process did not feel to me like an open one.

I did not use an AI tool in my brief opposing the first motion to dismiss in this case, but so as not to rely on my recollection and out of caution I went back and re-reviewed that opposition in full. I looked up every case cited in it and confirmed that each quotation and characterization of a holding was accurate. I can represent to the Court that I did not use an AI tool in that brief and that it does not contain the defects at issue here.

**III. Defendants' Papers**

I want to bring an additional matter to the Court's attention on my own initiative, because I believe candor requires it, even though the Court's bench ruling did not direct me to address it.

In preparing this response, I have gone back and reviewed all the submissions on the motions; I see that defendants' counsel raised issues with the quotations and citations in my opposition papers.

At the time they were filed, I did review defendants' reply papers, though not closely. I recall concluding that Mountain and Murphy's motions to dismiss and replies were fundamentally the same. I recall that when reviewing Mountain's reply and reaching the part where they criticized my citations, it opened by describing several of my cited cases as involving different fact patterns from this case, with a short description of each as a way of distinguishing them. I recall that in response, I pulled the first case listed there, *Provost v. City of Newburgh*, and checked my use of it against the underlying authority; I verified that I invoked it accurately and concluded that the criticism was off base. Having checked that one, I concluded that this portion of defendants' argument was a kind of fact-pattern-distinguishing argument, and I did not go on to check the cases that followed in that same list, or the rest of the section. I also presumed the Murphy reply brief was the same on that point.

My review of defendants' replies, such as it was, happened to focus on a citation that was not among those the Court later found problematic, and I stopped short. I generalized from a single accurate check to a conclusion about an entire section of defendants' arguments. I recognize this is a further illustration that my verification was too shallow and too easily satisfied.

## **IV. Response to the Specific Items Identified**

The Court identified eight items in my opposition papers. I address each below. I am not asking the Court to excuse any of them; and I make no attempt to defend any of them although there may be technical arguments that one or another citation was closer to an unsupported or loosely-supported proposition than an affirmative misrepresentation. The fact remains, I did not verify the veracity of the characterizations of the cases noted before citing them in my brief, and that failure is the same regardless of how each one is ultimately characterized. I address each item on that basis.

Item One: On page 4 of my opposition to Mountain's motion to dismiss, in defending the claim of first amendment retaliation against Defendant Mountain, I cited *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107 (2d Cir. 2004), with the following quotation and characterization: that Mountain "may be liable where she 'participated in the decision-making process' or carried out discriminatory or retaliatory actions initiated by others." The quoted

words "participated in the decision-making process" are not in the *Back* decision. Further, Back does not support the proposition for which I cited it. As the Court noted, *Back* held that a school superintendent did not have personal involvement in the alleged discrimination even when his action was on the recommendation of those who did, where the superintendent was not motivated by discriminatory intent or deliberately indifferent to others' discrimination. I withdraw the quote and the citation. I intended to advance the proposition that Plaintiff was not required to plead that Defendant Mountain was the architect of the unconstitutional conduct or originated the scheme. That proposition is generally supported by *Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001), and also by *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

Item Two: In the same section of my opposition brief, and to support the same point, I asserted that *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015) sustained the plaintiff's first amendment retaliation claims. The District Court dismissed *Mangino*'s first amendment retaliation claims on the grounds that the plaintiff didn't plead and prove a chilling of his free speech. The Second Circuit stated that the District Court's decision was incorrect as a matter of law, but that it was free to affirm on independent grounds, which it did. It did not sustain the claims. I withdraw the citation.

Item Three: On page four of my opposition to Mountain's motion to dismiss, I cited *Dolan v. Connolly*, 794 F. 3d 290 (2d Cir. 2015) and *Gorman-Bakos v. Cornell Cooperative Extension*, 252 F.3d 545 (2d Cir. 2001) for the proposition that retaliatory animus may be inferred from the circumstantial evidence. As the Court noted, while *Gorman-Bakos* does stand for this proposition, *Dolan* does not. The holding in *Dolan* was that the lower court erred when it ruled that plaintiff failed to allege first amendment protected conduct, finding that the prisoner's grievance filing was protected activity. I withdraw the citation. Additionally, on page five of my opposition to Murphy's motion to dismiss, I cited *Gorman-Bakos* and put in quotes "Close temporal proximity between protected speech and adverse action suffices to plead causation." The Court correctly noted that while the statement may fairly summarize the law in the opinion, the quotation does not appear in the decision. I withdraw the quotation.

Item Four: Also on page 5 of my opposition to Murphy's motion to dismiss, I cited *Dorsett v. County of Nassau*, 732 F. 3d 157 as further support for the proposition for which I had cited *Gorman-Bakos* on page 5. However, while *Gorman-Bakos* stands for that proposition, *Dorsett* does not. The *Dorsett* decision involves a Section 1983 retaliation case that addresses injury

other than a chill of free speech, but it does not address causation as I represented. Further, the text I put in quotes does not appear in the decision. I withdraw the citation.

Item Five: I purported to quote *Dillon v. Morano*, 497 F 3d 247 (2d Cir. 2007) on page 5 of my opposition to Mountain's motion to dismiss and also on page 6 of my opposition to Murphy's motion to dismiss. As the Court noted, the quote is not in the decision cited, and the case does not otherwise support the statement. I withdraw the citation.

Item Six: I cited *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) on page 5 of my opposition to Mountain's motion to dismiss and on page 6 of my opposition to Murphy's motion to dismiss, with the quote "Retaliatory animus can be plausibly pleaded without direct proof, courts must draw reasonable inferences in the plaintiff's favor." That quote is not in the decision. Further, I failed to notify the Court of subsequent case history. On different grounds, the Supreme Court vacated the *Ragbir* decision in *Pham v. Ragbir*, __ U.S. __, 141 S.Ct. 227, 208 L.Ed.2d 1 (2020) for further consideration in light of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 S.Ct. 1959, 207 L.Ed.2d 427 (2020). I withdraw the quote and the citation. The proposition for which I cited the *Ragbir* decision is supported by *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994)("[the] detailed allegations provide a chronology of events from which an inference can be drawn that actions taken by the Municipal Defendants were motivated by or substantially caused by the [Plaintiff's] exercise of [his] First Amendment rights. Therefore, the cause of action for retaliation pleaded in the complaint is sufficient to survive the Municipal Defendants' motion to dismiss").

Item Seven: On the issue of qualified immunity, I cited *Dougherty v. Town of N. Hempstead*, 282 F.3d 83 (2d Cir. 2002), *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003) on page 6 of my Mountain opposition papers and on pages 7-8 of my Murphy opposition papers, and I cited *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015)(this case is also addressed in Item Two, above) on page 6 of my Mountain opposition. The *Dougherty* and *Davis* decisions regard Section 1983 claims but do not regard qualified immunity, as the Court pointed out. *Mangino* is also inapposite; it addressed qualified immunity but neither its holding nor its logic supports the proposition for which I cited it. I withdraw these citations. Additionally, I cited *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) for the proposition that the right not to be retaliated against for exercising free speech is clearly established. While the case does include a claim for first amendment retaliation, it does not support the proposition for which I offered it. I withdraw

the citation. The propositions I intended to advance were (1) retaliation for free speech violates a clearly established right, and (2) that qualified immunity cannot be resolved on a motion to dismiss where intentional retaliation is plausibly alleged, because it is partly a factual question and we must take the allegations in the complaint as true. These propositions are supported by *P&J Empire Auto, Inc. v. Town of Newburgh*, 2018 WL 1275716, at *4 (S.D.N.Y. Mar. 8, 2018).

Item Eight: At the bottom of page 8 of my Murphy opposition papers on the issue of qualified immunity, I cited *Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013), for a similar proposition as in Item Seven, above, and with the proposition in quotes: "Even if qualified immunity were appropriate at this stage, Murphy's contentions could not be resolved on a motion to dismiss where the facts as pleaded contradict that position." The quoted language does not appear in the *Gonzalez* decision, and while that case deals with qualified immunity in the context of a Section 1983 claim, it does not otherwise support the proposition for which it was cited. I withdraw the quotation and the citation. The proposition is supported by *P&J Empire Auto, Inc. v. Town of Newburgh*, 2018 WL 1275716, at *4 (S.D.N.Y. Mar. 8, 2018).

## <u>V. The *Ragbir v. Homan* Subsequent History</u>

Separate from the quotation and holding issues, the Court noted that *Ragbir v. Homan* was later vacated on different grounds by *Pham v. Ragbir*, __ U.S. __, 141 S.Ct. 227, 208 L.Ed.2d 1 (2020) for further consideration in light of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 S.Ct. 1959, 207 L.Ed.2d 427 (2020), and that my brief did not disclose that subsequent history. I did not catch it for the same underlying reason: I did not perform the level of independent verification the Rules require. I take responsibility for that omission as well.

## <u>VI. This Matter Is Isolated to My Opposition Briefs</u>

Naturally the Court would be concerned about the scope of my error. The case at hand is my only pending matter in federal court. My only other active litigation is a state court matter that has been stayed pending appeal for over a year. I have not submitted unverified case law in the state court matter. Further, I have reviewed my earlier opposition to the first motion to dismiss in this case, as described above, and have confirmed it does not present the same issue. There is no other filing, in this case or any other, that contains AI-assisted research I have not verified.

## <u>VII. Context</u>

I am offering the following context so the Court might understand the contributing factors, and not as justification for the underlying failure.

First, the period in which these briefs were prepared coincided with an intensification of a chronic health condition that among other things affects my physical and cognitive stamina, compounded by a significant, unrelated family job loss that included a loss of health insurance as well as a loss of salary. I have learned through experience that stress can intensify my symptoms. It was in this context that I was served with two motions to dismiss, which further increased the stress and further increased the intensity of my symptoms. I raise this only to give the Court an honest account of the circumstances, not to excuse the underlying failure to verify. I recognize that the responsibility was mine regardless of the circumstances I was working under. Your Honor noted that an adjournment request or having co-counsel handle the opposition were the prudent responses. I had no way of knowing for how long that period would last, which made me conclude that it was not an adjournment I could ask for. Also, I am a solo attorney and I did not have an existing relationship with co-counsel in this practice area to bring in. I recognize now that raising my situation with the Court at the time, rather than working through it alone, would have been the better course, and it is a lesson I am taking from this experience. I have since begun engaging with the New York Lawyer Assistance Program for support in managing this going forward.

Second, in addition to my health issues, I wanted to protect my client from the burden to fully fund research and drafting against two separately briefed motions to dismiss, more than two years into a case in which no answer had yet been filed. I was not trying to gain an advantage through inaccurate authority. I wanted to minimize the cost of the opposition effort for my client. At the time I thought the AI tool was a solution, not recognizing that it was the opposite of a solution.

**VIII. Steps Already Taken with Respect to My Client**

I informed my client of this Order to Show Cause promptly after the bench ruling, memorialized that conversation, and provided him with the transcript of the bench ruling. I also advised him that it may be in his best interest to retain new counsel for the remainder of this matter. It is my understanding that he has since spoken with another attorney who may take over the representation. I can address the mechanics of a substitution with the Court separately if and

when that process moves forward, and I raise it here only so the Court has a complete picture of the steps I have taken in response to this situation.

**<u>IX. Remedial Measures</u>**

Regardless of the outcome of this proceeding, I have adopted the following practice going forward, effective immediately: every quotation and every characterization of a holding in any filing I submit will be checked against the full text of the cited opinion, retrieved from Westlaw or Lexis, before filing. My verification process will never be using an AI tool's summary or a second AI tool to check the first. Given that I practice alone, I intend to build a documented verification step into my own workflow for every filing rather than relying on my recollection that I performed it.

**<u>X. Requested Sanction</u>**

I recognize and respect the authority of the Court to impose a sanction and I do not mean to presume an outcome. If the Court is inclined to impose a monetary sanction, I respectfully ask that it take into account my financial circumstances in setting the amount: due to my health condition, I practice law part-time and that has been so since my illness began in 2020. My household's other income has been interrupted for nearing a year, and I am the primary means of support for my family, including two young children. If the Court is inclined to impose a monetary sanction and should the Court find further substantiation of my financial circumstances helpful in setting the amount of any monetary sanction, I would welcome the opportunity to provide it *in camera* or under seal, given the personal and non-public nature of that information.

**<u>XI. Conclusion</u>**

I apologize to the Court and its staff for the burden this has caused. I offer my apologies to Ms. Cook, Ms. Del Cid, Ms. Fichtel and their firms for the burden this has caused them. I regret the impact this has had on my own client. I take full responsibility for what happened, and I am committed to making sure it does not happen again.

Respectfully submitted,

Brian M. Higbie

Brian M. Higbie, Esq.